Filed 11/29/22 In re K.L. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.L. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.F.,<br><br>        Defendant and Appellant. | E078302<br><br>(Super.Ct.Nos. J282009 & J282010)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County. Steven A. Mapes, Judge. Affirmed in part, vacated in part, and remanded with directions.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Tom Bunton, County Counsel, and Svetlana Kauper, Deputy County Counsel, for Plaintiff and Respondent.

J.F. (Mother) appeals from the juvenile court's findings and orders after a contested jurisdiction and disposition hearing pursuant to section 387 of the Welfare and Institutions Code. (Unlabeled statutory citations refer to this code.) The court removed the children, K.J.L. and K.C.L., from Mother's custody, terminated services, and set a permanency planning review hearing. Mother contends that San Bernardino County Children and Family Services (CFS) failed to discharge its duty of initial inquiry under state law implementing the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA). We grant CFS's motion to augment the record, vacate the juvenile court's findings that ICWA does not apply, and otherwise affirm.

## BACKGROUND

We briefly summarize the dependency proceedings, focusing on the facts relevant to the ICWA inquiry issue presented.

In August 2019, K.C.L. (age two) and K.J.L. (age three) came to CFS's attention when their older half sister, who is not a subject of this appeal, reported physical abuse, leading to Mother's arrest. At that time, the two children and their half sister had been living with Mother and her fiancé. Their maternal grandmother lived on the premises and assisted with childcare. The children's father, A.L. (Father), was then incarcerated but eligible for parole in October 2019.

2

CFS interviewed maternal grandmother on the day of Mother's arrest but did not make any inquiry regarding the children's possible Indian status. The children were temporarily detained in foster care. CFS interviewed Mother the following day, and she denied Indian ancestry.

Dependency petitions were filed for both children on August 9, 2019. When asked by the court at the detention hearing on August 12, 2019, Mother denied Indian ancestry. On the same day, she signed a Parental Notification of Indian Status form denying knowledge of any Indian ancestry. When asked at the jurisdiction hearing on September 17, 2019, Father denied Indian ancestry. He too signed a Parental Notification of Indian Status form denying knowledge of any Indian ancestry.

At the continued jurisdiction and disposition hearing on October 16, 2019, both parents submitted pursuant to a mediation agreement. In accordance with the mediation agreement, the court took jurisdiction over both children under section 300, subdivision (b), detained them from both parents, found ICWA did not apply, found Father to be the presumed father of both children, and ordered reunification services for both parents.

In March 2020, both parents again denied Indian ancestry. Mother stated she had been in foster care as a child and did not know the identity of her father. She was unable to identify any additional relatives of the children. Father identified his parents as the children's relatives. Both paternal grandparents were contacted by CFS, denied Indian

3

ancestry, and stated that they had no further information regarding additional relatives of the children.

In August 2020, Mother requested that the children be allowed visitation with maternal grandmother, and CFS arranged for supervised phone contact with maternal grandmother. The record is unclear as to whether CFS had direct contact with maternal grandmother at that time, and nothing indicates any ICWA inquiry was made.

In January 2021, both parents again denied Indian ancestry. In April 2021, Father, who was having difficulty maintaining his sobriety and participating in drug treatment and testing, agreed to move out of the home so the children could be returned to Mother. At the 18-month review hearing, the juvenile court ordered the children returned to Mother's custody under court supervision and admonished Mother not to allow Father in the home without approval.

About four months later, CFS filed supplemental petitions pursuant to section 387 seeking to remove both children from the home. The children were detained pursuant to warrant and temporarily placed in foster care. CFS had received a referral, confirmed by subsequent interviews with the children and the maternal grandmother, that Father had been at the home often, sometimes spending the night, that the children had witnessed a domestic violence incident between Father and maternal grandmother, and that both children reported being physically disciplined with a belt.

Maternal grandmother confirmed to a CFS social worker that when Mother was in the hospital for a few days, Father had come to the home on August 12, 2021, looking for

4

Mother, gotten angry, attacked maternal grandmother, and pulled her off the couch in front of the children, prompting her to call the police. The record contains no indication that CFS conducted the required ICWA inquiry of maternal grandmother at the time of that interview. At the August 2021 detention hearing, Mother denied Indian ancestry. Neither parent participated in interviews for the jurisdiction/disposition report, and neither parent visited the children after they were re-detained. CFS recommended that the children remain out of the custody of both parents and that reunification services be denied to both parents.

At the December 2, 2021, contested further jurisdiction and disposition hearing, Mother and her half brother, R.S., testified. Both witnesses denied that Father had been in the house since the children had been returned in April, except for the single incident on August 12 when the altercation occurred with maternal grandmother. Mother also denied that the children were spanked with belts.

After considering the reports, testimony, and arguments, the juvenile court stated that the testimony of both Mother and R.S. lacked credibility and that the children's forensic interview testimony was consistent regarding the Father's frequent presence in the home. The court found true the supplemental petitions' allegations that Mother had placed the children at substantial risk of abuse, harm, and neglect by engaging in domestic violence with Father and failing to protect them from Father's domestic violence with maternal grandmother. Because the statutory time for reunification had elapsed, the court terminated services to both parents. The court found by clear and

convincing evidence that there was a compelling reason not to set a selection hearing pursuant to section 366.26, and the court set a permanency planning review hearing for May 27, 2022. The court also found that ICWA did not apply to the children.

DISCUSSION

Mother argues that by failing to ask maternal grandmother about the possible Indian status of the children, CFS failed to discharge its duty of inquiry under state law implementing ICWA. We agree.

"ICWA was enacted to curtail 'abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' [Citation.] 'ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family.' [Citation.] In a juvenile dependency proceeding, an Indian child is any unmarried person who is under age 18 and is either (a) a member of a federally recognized Indian tribe or (b) is eligible for membership in a federally recognized Indian tribe and is the biological child of a member of a federally recognized Indian tribe. [Citations.]" (*In re Dominick D*. (2022) 82 Cal.App.5th 560, 565-566 (*Dominick D*.).)

To implement ICWA, California law has placed on both CFS and the juvenile court "an affirmative and continuing duty to inquire whether a child" subject to a dependency petition "is or may be an Indian child." (§ 224.2, subd. (a).) "This duty to

6

inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry. [Citation.] The duty of initial inquiry begins at the referral stage when CFS must ask 'the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.' (§ 224.2, subd. (a).) Once a child is taken into temporary custody, the duty of initial inquiry includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is or may be an Indian child. (§ 224.2, subd. (b); § 306, subd. (b).) Extended family members include adults who are the child's stepparents, grandparents, aunts, uncles, brothers, sisters, nieces, nephews, or first or second cousins. (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c).)" (*Dominick D*., *supra*, 82 Cal.App.5th at p. 566.) The juvenile court must make certain inquiries of the parties at their first appearance and must ensure that CFS has conducted an adequate investigation, made all required inquiries, and properly documented its efforts before the court makes a finding regarding ICWA's applicability. (*Id*. at p. 567.)

CFS does not deny that it erred by failing to ask maternal grandmother about the children's possible Indian status even though she was living with the children and was interviewed by CFS social workers both when the children were originally removed in 2019 and when they were removed again in 2021. Under the standard we set forth in *In re Benjamin M*., the error is reversible because maternal grandmother had "readily obtainable information that was likely to bear meaningfully upon" the children's possible Indian status. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.)

CFS filed with its brief a motion to augment the record to include the minute order from the juvenile court's section 366.3 hearing in May 2022, as well as the status review report CFS filed for that hearing. CFS argues in its brief that because the report reflects that maternal grandmother's whereabouts are now unknown, "any purported error must be deemed harmless." We grant the motion to augment but do not find CFS's argument persuasive for two reasons.

First, CFS's present inability to locate maternal grandmother does not render harmless CFS's prior violation of its duty of inquiry. If anything, it shows only that CFS is presently unable (or was unable in May 2022) to remedy the harm that its violation caused.

Second, as we recently explained in *In re Ricky R.*, evidence of CFS's efforts to discharge its duty of inquiry should be evaluated in the first instance by the juvenile court. (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 682.) CFS presented that evidence to the juvenile court, but the court's findings and orders at the May 2022 hearing, including the findings and orders adopted from CFS's report, did not address ICWA. The juvenile court thus has not evaluated CFS's new evidence or made any new ICWA findings in light of that evidence. The report and minute order from the May 2022 hearing consequently do not affect our analysis—the juvenile court must evaluate CFS's evidence in the first instance, and CFS must continue its efforts to comply with its duty of inquiry until the juvenile court finds that duty has been discharged.

8

Finally, Mother asks us to conditionally reverse the dispositional orders removing the children from her custody, because a different standard may be applicable if the children are deemed to be Indian children. As we explained in *Dominick D.*, however, initial inquiry error does not require the reversal of dispositional orders. (*Dominick D.*, *supra*, 82 Cal.App.5th at p. 567.) Accordingly, we vacate only the ICWA finding but otherwise affirm the dispositional findings and orders.

### DISPOSITION

The juvenile court's December 2021 findings that the children do not come within the provisions of ICWA are vacated. On remand, the juvenile court shall order CFS to comply with the duty of initial inquiry (§ 224.2, subd. (b)) and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the pertinent tribes (25 U.S.C. § 1912(a); § 224.3). In all other respects, the juvenile court's dispositional findings and orders on the section 387 petition are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

9